UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KHA N.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C24-5002 RSM

**ORDER AFFIRMING AND DISMISSING THE CASE**

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the ALJ misinterpreted and misevaluated medical opinion evidence and erred in rejecting Plaintiff's symptom testimony. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is 32 years old, has at least a high school education, and has no past relevant work. Admin. Record (AR) 34. In July 2020, Plaintiff applied for benefits, alleging disability as of July 29, 2020. AR 73, 89. Plaintiff's application was denied initially and on reconsideration. AR 86, 107. After the ALJ conducted a hearing on November 3, 2022 (AR 40–70), the ALJ issued a decision finding Plaintiff not disabled. AR 14–39. The ALJ determined Plaintiff is able to perform a full range of work, but limited him, in relevant part, to "no interaction with the

ORDER AFFIRMING AND
DISMISSING THE CASE - 1

general public and only incidental interaction with supervisors and co-workers." AR 22.

## DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational. *Ford*, 950 F.3d at 1154. Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 1. Medical Opinion Evidence

Plaintiff contends the ALJ misinterpreted the medical opinion of ARNP Chime and erred in rejecting the medical opinions of Dr. Ledesma, Dr. Ruddell, and Dr. Widlan. Dkt. 10 at 2–3, 7–8.

Under the applicable rules, the ALJ must "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions" by considering their supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c). The ALJ is specifically required to consider the two most important factors, supportability and consistency. 20 C.F.R. § 416.920c(a). The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). The consistency factor involves consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2). Further, under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022).

        a.        **ARNP Chime**

Plaintiff does not challenge the ALJ's evaluation of ARNP Chime's opinion but avers the misinterpretation of the nurse's findings led to an erroneous assessment that Plaintiff is able to interact consistently. *Id.* The basis for Plaintiff's argument is the portion of ARNP Chime's opinion pertaining to Plaintiff's activities of daily living, which states that Plaintiff reported the following: "I wake up, take a shower something to eat something, and sit downstairs or in my room, usually on the internet in the afternoon, I go look for something else to eat, video games, eat dinner and try to go to bed." AR 328. ARNP Chime then listed, in relevant part, the following activities: "Shopping – Independent" and "Transportation – Can use public transit independently." *Id*. Plaintiff argues that despite ARNP Chime noting his ability to independently engage in these activities, there is not enough information in the report to show he actually engaged in these activities. Dkt. 10 at 3. Instead, Plaintiff asserts his inability to interact "varies." *Id*. Therefore, according to Plaintiff, the ALJ erred in finding Plaintiff could interact consistently. *Id*.

Plaintiff's argument is undercut by the fact that the ALJ did not assess Plaintiff could interact consistently. The ALJ determined Plaintiff is limited to "no interaction with the general public and only incidental interaction with supervisors and co-workers." AR 22. Even if the Court were to accept Plaintiff's reading of ARNP Chime's report, Plaintiff has not shown the ALJ's RFC assessment of incidental to no interaction is contradictory to the fact that, as Plaintiff himself said, he "is able to interact with others at times and at times he is not able to do." *See* Dkt. 10 at 3.

ORDER AFFIRMING AND
DISMISSING THE CASE - 3

### b. Dr. Ledesma

Dr. Ledesma opined Plaintiff would be unable to interact with co-workers and the public and would have difficulty with accepting instructions from supervisors.[1] AR 306. The ALJ reasonably rejected this opinion because Plaintiff was able to interact with her throughout the evaluation. *See* AR 31. And though Dr. Ledesma observed Plaintiff had a difficulty establishing eye contact and rapport, Plaintiff was nonetheless noted as oriented to person, place and time, and he was able to answer the doctor's questions "in an appropriate manner for the most part." *See* AR 304.

The ALJ also rejected Dr. Ledesma's opinion because it was "not consistent with the record as whole, which shows essentially unimpaired social functioning on evaluation with Ms. Chime." AR 31–32. The ALJ's interpretation of the record is not supported by substantial evidence, given ARNP Chime found Plaintiff "not able to interact with coworkers and supervisors and the public." *See* AR 331. Further, the record, as a whole, does not necessarily show Plaintiff is "essentially unimpaired" with regards to social functioning, given the observations about Plaintiff's lack of response to certain medical providers and the evaluations finding him limited in his ability to interact. *See, e.g.,* AR 361, 374. In rejecting Dr. Ledesma's opinion for its inconsistency, the ALJ erred. However, because the ALJ's supportability analysis was supported by substantial evidence, the ALJ's improper evaluation based on the inconsistency factor is deemed harmless. *Woods*, 32 F. 4th at 793 (affirming the ALJ's rejection of medical opinion based on an inconsistency finding alone).

---

[1] Dr. Ledesma also opined about Plaintiff's cognitive and physical ability to perform tasks. AR 306. However, Plaintiff challenges only the ALJ's evaluation of Dr. Ledesma's opinion pertaining to his ability to interact, therefore the Court focuses only on this portion of the ALJ's evaluation. *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (noting the Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief)).

     **c.**  **Dr. Ruddell and Dr. Widlan**

  Dr. Ruddell opined Plaintiff has moderate to marked limitations in basic work activities. AR 357.  Dr. Widlan opined Plaintiff has "significant deficits in social reasoning," and while "he can cognitively understand very simple instruction[,] he cannot persist for even simple tasks." AR 372.  In an evaluation of Plaintiff's mental functioning, Dr. Widlan also found Plaintiff is not able to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 374.  Dr. Widlan further found Plaintiff "will have noticeable difficulty more than 20 percent of the work day or work week" with asking simple questions or requesting assistance, and "will have noticeable difficulty [for] 11-20 percent of the work day or work week" with maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.  *Id*.

  The ALJ found the opinions of Dr. Ruddell and Dr. Widlan supported by the findings of the doctors' respective evaluations but ultimately rejected them for their inconsistency—Dr. Ruddell's with the "examination of nurse practitioner Chime" and Dr. Widlan's with Plaintiff's "reports, presentation, and performance on other evaluations."  AR 31, 33.  The ALJ does not specify the "other evaluations" he compared Dr. Widlan's opinion with, but goes on to state that "if [Plaintiff were] truly as impaired as Dr. Widlan found, [Plaintiff] would not have been capable of presenting as he did to nurse practitioner Chime."  *Id*.

  As stated above, the ALJ's interpretation of ARNP Chime's opinion is not supported by substantial evidence, given ARNP Chime opined Plaintiff is "not able to interact with coworkers and supervisors and the public."  *See* AR 331.  Thus, in rejecting the opinions of Dr. Ruddell and Dr. Widlan for their inconsistencies, the ALJ erred.

ORDER AFFIRMING AND
DISMISSING THE CASE - 5

However, Plaintiff has failed to show that the ALJ's errors in the evaluation of the medical opinion evidence, is not harmless, or "'inconsequential to the ultimate nondisability determination.'" *See Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). Although the ALJ's reasons for rejecting the opinions of Dr. Ruddell and Dr. Widlan were not supported by substantial evidence, the RFC as assessed by the ALJ nonetheless adequately reflects the physicians' opinion. *See Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations). Dr. Ruddell found Plaintiff only moderately limited in work activities relating to interaction, while Dr. Widlan found Plaintiff unable to interact appropriately with the general public—these are accounted for in the ALJ's assessment that Plaintiff would have no interaction with the general public. *See* AR 22, 357, 374. Plaintiff also has not shown Dr. Widlan's opinion that Plaintiff would have difficulties with asking simple questions or requesting assistance is not addressed by ALJ's decision to limit Plaintiff to only incidental interaction with co-workers and supervisors. *See* AR 22, 374. Further, even if the RFC did not account for the rest of Dr. Widlan's opinion, the Court cannot say the ALJ's ultimate finding of nondisability was erroneous given the jobs the ALJ determined Plaintiff is able to perform do not require talking or significant interaction. Dictionary of Occupation Titles (DOT) 381.687-018, 919.687-014, 361.684-014.

**2.     Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred in evaluating his symptom testimony. Dkt. 10 at 4–7.

In his function reports, Plaintiff wrote he is unable to work because of his anxiety and

depression. AR 222. He stated he rarely leaves his home except for medical appointments, rarely talks to his family, and spends most of his time sitting in his room. AR 240. He wrote that he has "autistic hallucinations[,] mood swings[,]" and "anger bursts." *Id*. He added he has poor fine motor skills, memory issues, and weakness across his legs. *Id*. During the hearing with the ALJ, Plaintiff's mother and family friend testified on Plaintiff's behalf. AR 45–70. They described Plaintiff as expressionless at times. AR 63. They stated Plaintiff has a hard time talking to others, which makes it difficult for him to participate in therapy. AR 54–56. They explained Plaintiff was in treatment but stopped attending because the clinic repeatedly changed his counselors. AR 56. They stated Plaintiff spends most of his time in his room by himself with no television, computer, or games, and he only leaves his room to eat or help around the house if asked, but he does not talk to anyone when he does. AR 59–61.

      Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

      Here, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms "not fully consistent" with the evidence. AR 23. In making this assessment, the ALJ first pointed to Plaintiff's "virtual lack of treatment." AR 24. "[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies."

ORDER AFFIRMING AND
DISMISSING THE CASE - 7

1    *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th

2    Cir. 1989)).  But "a claimant's failure to assert [a good reason], 'or a finding by the ALJ that the

3    proffered reason is not believable, can cast doubt'" on the claimant's testimony.  *Molina*, 674

4    F.3d at 1113–14 (quoting *Fair*, 885 F.2d at 603).  Here, the record shows Plaintiff was

5    discharged from therapy after failing to engage with his counselor.  AR 337.  According to

6    Plaintiff's mother and family friend, Plaintiff's reason for refusing to return to therapy was his

7    difficulties with interacting with others and the clinic's decision to change his counselors.  AR

8    54–56.  While Plaintiff does have difficulties with participating in examinations, s*ee, e.g.,* AR

9    304, 358, as the ALJ pointed out, Plaintiff's counselors had in fact not changed while he was

10   engaged in therapy.  *See* AR 337–49.  In rejecting Plaintiff's testimony based on his lack of

11   treatment, the Court cannot say the ALJ erred.

12           The ALJ next found that when Plaintiff did engage in treatment, his presentations

13   undermined testimony.  AR 24–29.  "When objective medical evidence in the record is

14   *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as

15   undercutting such testimony."  *Smartt*, 53 F.4th at 498.  Here, the ALJ pointed out Plaintiff was

16   cooperative during his therapy sessions, observed as "forthright" in his answers, interactive, and

17   had good eye contact during his evaluations.  AR 329, 340, 343–44, 348, 358.  The ALJ also

18   pointed out Plaintiff's claims of hallucinations and cognition deficits were likewise undermined

19   by his own denial of hallucinations and examinations revealing normal thought process and no

20   difficulty with concentration or attention.  *See* AR 329, 340, 344, 348.

21           Finally, the ALJ found general inconsistencies within Plaintiff's testimony and

22   statements throughout the record.  AR 25.  An ALJ may reject a claimant's symptom testimony

23   when the claimant makes inconsistent statements concerning his symptoms.  *See Tommasetti v.*

ORDER AFFIRMING AND
DISMISSING THE CASE - 8

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  Here, the ALJ noted that the statements provided by Plaintiff, his mother, and family friend about his everyday activity were at odds with Plaintiff's admission that he draws, plays video games for two hours daily, uses his phone and computer, uses the internet for YouTube and music sites, and reads.  *Compare* AR 60 *with* AR 328, 356.

"Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina*, 674 F.3d at 1111.  The inconsistencies noted by the ALJ between Plaintiff's testimony and the record regarding his symptoms, ability to interact, cognition, and activities are valid reasons to reject Plaintiff's testimony, and they are supported by substantial evidence.  The Court therefore cannot say the ALJ erred in evaluating Plaintiff's testimony.

Plaintiff also contends the ALJ erred by only noting Plaintiff's report of anger outbursts once, but then failing to discuss it throughout the evaluation of his symptom testimony even though it is mentioned in several records.  Dkt. 10 at 6–7.  Plaintiff also suggests the omission of this symptom in the evaluation is consequential because the vocational expert testified that an "outburst with supervisors [] would not be tolerated at all and would result in employment termination."  *Id*. at 7.

Plaintiff has not shown this caused harmful error.  The records cited by Plaintiff show only that he himself reported anger bursts.  The medical sources who evaluated him did not make any particular findings regarding this symptom and they did not appear to factor it in their opinions.  The ALJ is not required to include limitations for which there is no evidence.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).  Moreover, the vocational expert did not actually state that anger outbursts with supervisors would preclude employment.  The

ORDER AFFIRMING AND
DISMISSING THE CASE - 9

record shows Plaintiff's counsel asked only about whether not responding or interacting with supervisors would be tolerated in a workplace, not about the effects of anger outbursts. *See* AR 68.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 18th day of July, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE